UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| Orius Corp., et al. | ) | Case No. 05- 63876 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | Honorable Judge Bruce W. Black |

## FINAL ORDER AUTHORIZING USE OF
## CASH COLLATERAL AND ADEQUATE PROTECTION

This matter came before the Court on the motion (the "**Motion**") for approval and entry of a Final Order Authorizing Use of Cash Collateral and Adequate Protection ("**Final Cash Collateral Order**") made by Orius Corp. and the other jointly administered debtors in these cases, as debtors and debtors in possession (collectively, the "**Debtors**"). The preliminary hearing having been heard on December 14, 2005 (the "**Preliminary Hearing**"), as provided under sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); the final hearing having been held on January 10, 2006 (the "**Final Hearing**"); and having considered the evidence presented and the statements of respective counsel for the Debtors, Deutsche Bank Trust Company Americas, as agent (the "**Agent**") for the lenders (the "**Lenders**") party to that certain Credit Agreement dated as of January 23, 2003 (as amended, the "**Credit Agreement**"), and other parties in interest, the Court,

being duly advised in the premises, hereby makes the following findings of fact and conclusions of law[1]:

    A.    On December 12, 2005 (the "**Petition Date**"), the Debtors commenced these voluntary cases (the "**Cases**") by the filing of petitions under chapter 11 of the Bankruptcy Code.

    B.    The Debtors continue in possession of their properties and continue to manage and operate their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

    C.    The Cases have been consolidated for procedural purposes only and are being jointly administered in accordance with Bankruptcy Rule 1015(b) pursuant to an order of this Court dated December 14, 2005.

    D.    On the Petition Date, the Debtors filed their motion (the "**Sale Motion**") for the sale pursuant to section 363 of the Bankruptcy Code of substantially all of the tangible assets and contract rights of Orius Corp., Orius Telecom Services, Inc. and Orius Telecommunication Services, Inc. to Dycom Industries, Inc. ("**Dycom**"), pursuant to that certain Asset Purchase Agreement by and between Dycom and Orius Corp. (together with any amendments, supplements or other modifications, the "**Purchase Agreement**").

    E.    On December 15, 2005, the Court approved and entered, *inter alia*, the Interim Order (I) Authorizing Use of Cash Collateral and Adequate Protection and (II) Scheduling and Approving the Form and Method of Notice of the Hearing on the Debtors' Motion For Entry of Final Order to Use Cash Collateral (the "**Interim Cash**

---

[1] Capitalized terms used and not defined herein shall have the meanings set forth in the Credit Agreement.

**Collateral Order"**).  The Court set January 2, 2006, at 12:00 p.m. CST as the deadline for filing objections to the Interim Cash Collateral Order.  The Debtors promptly and properly served notice of entry of the Interim Cash Collateral Order and of the deadline for objections and opportunity for a hearing, and served a copy of the proposed Final Cash Collateral Order, on (a) the Office of the United States Trustee; (b) Dycom Industries, Inc. and its counsel; (c) Deutsche Bank Trust Company Americas, as agent for the Lenders, its counsel, and the Lenders; (d) the Internal Revenue Service, (e) the Debtors' fifty largest unsecured creditors as set forth in the consolidated list filed with the Debtors' petitions; and (f) other secured creditors of the Debtors holding liens of record, if any, (g) parties to certain executory contracts and unexpired leases, (h) the Debtors' commercial bank, JP Morgan Chase, (i) certain of the Debtors' insurers and sureties; and (j) counsel to the Official Committee of Unsecured Creditors (the "**Committee**").  This notice of the Final Hearing is good and sufficient, as approved by the Court at the Preliminary Hearing.

F.    The Debtors' authorization to use cash collateral is subject to termination 45 days after entry of the Interim Cash Collateral Order, unless the Final Order has been entered by the Court in form and substance satisfactory to the Agent.

G.    The Agent has filed a master proof of claim on behalf of itself and the Lenders in each of the Cases (collectively, the "**Master Proof of Claim**").  The Master Proof of Claim was executed and filed in accordance with applicable Bankruptcy Rules and constitutes prima facie evidence of the validity and amount of the secured

claim of the Agent and each of the Lenders pursuant to Bankruptcy Rule 3001(f).[2]

H.     The Master Proof of Claim reflects, and the Debtors acknowledge, that from time to time prior to the Petition Date, NATG Holdings, LLC (the "**Borrower**") borrowed money and received other financial accommodations from the Agent and the Lenders under the Credit Agreement and incurred additional obligations in connection therewith, including without limitation, obligations for payment or reimbursement of certain of the Agent's fees, costs and expenses. The Master Proof of Claim also reflects that the other Debtors (collectively, the "**Guarantors**"), absolutely and unconditionally guaranteed the Obligations under that certain Holdings Guaranty, dated as of January 23, 2003, as amended, and that certain Subsidiary Guaranty, dated as of January 23, 2003, as amended.

I.     The Master Proof of Claim further reflects, and the Debtors acknowledge, that the Obligations are secured by security interests and liens in and against substantially all property of the estates of the Borrower and the other Debtors in favor of the Agent on behalf of itself and the Lenders (the "**Prepetition Collateral**").

J.     The Master Proof of Claim further reflects, and the Debtors acknowledge, that as of the opening of business on the Petition Date, (i) the aggregate outstanding principal amount of Loans included in the Obligations was approximately $96,313,359.57, (ii) the aggregate outstanding amount of accrued and unpaid interest and fees included in the Obligations was approximately $45,752.47, (iii) the aggregate

---

[2]     See decretal Paragraph 23 concerning the intended scope of the findings of fact and the reservation of rights in respect of objections, if any, of parties in interest, other than the Debtors, to the Master Proof of Claim.

outstanding undrawn amount of Standby Letters of Credit included in the Obligations was $13,580,033.00, as identified in Exhibit A hereto, and (iv) the total amount of the Obligations outstanding as of the Petition Date was approximately $109,939,145.04, exclusive of fees, costs and other expenses for which the Agent and the Lenders are entitled to payment or reimbursement.

K.     The Master Proof of Claim further reflects, and the Debtors acknowledge, that the Obligations and the security interests and liens in and against the Prepetition Collateral securing the Obligations are evidenced by certain loan, security and other collateral agreements between and among the Agent, on behalf of itself and the Lenders, the Borrower and the Guarantors, as they may have been amended from time to time, certain promissory notes executed by the Borrower in favor of the Lenders, and other agreements, documents, guaranties and instruments entered into, delivered or otherwise related to the Obligations and the Prepetition Collateral (collectively, the "**Lender Agreements**"). A list of the principal Lender Agreements has been filed as an exhibit to the Master Proof of Claim.

L.     The Master Proof of Claim further reflects, and the Debtors acknowledge, that the Agent has perfected its security interests and liens in and against the Prepetition Collateral by possession thereof or by the filing of financing statements and other documents as applicable in the appropriate filing offices, a list of which is attached to the Master Proof of Claim.

M.     Pursuant to sections 363(a) and 552(b) of the Bankruptcy Code, certain cash and cash equivalents held by the Debtors as of the commencement of the Cases and the proceeds, products, offspring, rents or profits of the Prepetition Collateral

received by the Debtors after the commencement of the Cases constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and in which the Agent on behalf of itself and the Lenders has an interest within the meaning of sections 363(c)(2) and 363(e) (the "**Cash Collateral**").

N.     The Debtors are engaged in the business of providing technical expertise and network services to the telecommunications and broadband industries, government and utilities.

O.     In order to continue the operation of their respective businesses, preserve the value of property of the respective estates, and avoid immediate and irreparable harm to the respective estates during the Cases, the Debtors require authorization for the continued use of Cash Collateral to pay wages, salaries, operating expenses, and certain professional fees.

P.     Under the circumstances of these Cases, the Debtors are not able to continue to operate without the use of Cash Collateral.  The Debtors have requested authority for the continued use of Cash Collateral during the Cases for the purposes and in the amounts set forth in the operating budget attached hereto as Exhibit C and incorporated herein by this reference or in any replacement budget delivered in accordance with decretal Paragraph 16(iii) (such operating budgets, together with any modifications thereto made with the prior written consent of the Agent in each instance, collectively being the "**Operating Budget**").

Q.     The Agent and the Lenders have agreed to the use of Cash Collateral for the purposes and in the amounts set forth in the Operating Budget, provided that such use is conditioned upon the benefits conferred herein, and otherwise subject to

the terms and conditions of the Interim and Final Cash Collateral Orders, including without limitation:

(a)   the grant to the Agent on behalf of itself and the Lenders of replacement and additional liens in and against all property of the respective estates, whether existing on or acquired on or after the Petition Date and all proceeds, products, offspring, rents or profits thereof, all as authorized under sections 361 and 363(c) of the Bankruptcy Code;

(b)   notwithstanding sections 502(b)(2) and 506(b) of the Bankruptcy Code, unless waived in writing by the Agent in each instance, (i) the continued accrual and payment of interest on the Tranche A Revolving Loans, Term B-2 Loans and Fees on the Standby Letters of Credit, at the non-default rate and pursuant to the terms applicable under the Lender Agreements (without giving effect to any defaults thereunder), and (ii) the continued accrual and payment of all reasonable out-of-pocket costs and expenses of the Agent, including without limitation reasonable fees and out-of-pocket expenses of its counsel and financial advisor; and

(c)   the "Termination Events," as such term is defined below.

R.   Good cause has been shown for the entry of this Final Cash Collateral Order and the authorizations herein.  Among other things, the entry of this Final Cash Collateral Order will enable the Debtors to continue operating pending consummation of the transactions contemplated by the Purchase Agreement and Sale Motion, avoid immediate and irreparable harm to the respective estates and otherwise is in the best interests of the Debtors, their creditors and their respective estates.

S.   The conditions set forth herein on the Debtors' use of Cash

Collateral are intended to provide adequate protection of the interests of the Agent in the Cash Collateral and Prepetition Collateral and are fair under the circumstances.

T.    This Final Cash Collateral Order is entered in a "core proceeding" as defined at 28 U.S.C. § 157(b)(2)(M).

U.    This Final Cash Collateral Order is immediately valid and fully effective upon its entry.

V.    All conclusions of law that are or may be deemed to be findings of fact are incorporated herein as findings of fact.

W.    All findings of fact that are or may be deemed to be conclusions of law are incorporated herein as conclusions of law.

## ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.    Subject to the terms and conditions of the Interim and Final Cash Collateral Orders, the Debtors hereby are authorized to use Cash Collateral to pay wages, salaries, operating expenses, success and stretch incentive bonus payments (if pursuant to a final order of this Court) and certain professional fees incurred during the term of the Interim and Final Cash Collateral Orders (all as reflected in the Operating Budget), provided that the Debtors first shall have transferred to Borrower by way of dividend all unrestricted cash and cash equivalents held by Orius Tranche B Finance Company, LLC, a nondebtor subsidiary of Borrower ("**Orius Finance**"), and the same shall have been used for expenditures of the Debtors under the Operating Budget prior to use of any other Cash Collateral.

2.    Nothing herein shall: (a) require or be deemed to require the Agent or the Lenders to make a loan or extend other financing or financial accommodations to

or for the benefit of any of the Debtors; or (b) constitute or be construed as a waiver by the Agent or the Lenders of their rights under section 507(b) of the Bankruptcy Code.

   3. As protection for the interests of the Agent and the Lenders in the Cash Collateral and the Prepetition Collateral, the Debtors hereby are deemed to have granted the following to the Agent on behalf of itself and the Lenders with the same relative priority as provided under the Lender Agreements (collectively, the "**Postpetition Collateral**"):

   (a) replacement security interests and liens in and against all proceeds, products, offspring, rents or profits of the Prepetition Collateral to the extent provided under section 552(b) of the Bankruptcy Code; and

   (b) additional security interests and liens against all other property of the Debtors whether existing on or generated or acquired on or after the Petition Date, including, without limitation, (i) any actions to avoid any transfers or payments that occur after the Petition Date, (ii) any actions to return retainers held by the Debtors' professionals, and (iii) any actions to avoid transfers of property on which the Agent has a lien or security interest (the actions described in clauses (i), (ii) and (iii) being, collectively, "**Pledged Actions**"), but in any event only to the extent of the diminution in the value of the Prepetition Collateral.

   (c) For purposes of this Final Cash Collateral Order, **Postpetition Collateral** shall include, without limitation, all rights of the Debtors to refunds of amounts paid prepetition or postpetition under any Standby Letters of Credit.

   (d) The security interests and liens of the Agent and the Lenders in the Postpetition Collateral shall be senior to the rights of all entities, including

without limitation, the Debtors and any successor trustee in these or any subsequent cases under the Bankruptcy Code, subject only to the terms and conditions of decretal Paragraph 12 and statutory or other liens existing prior to the commencement of these Cases, if any, that are valid, perfected and non-avoidable with priority over the security interests and liens of the Agent in and against the Prepetition Collateral or Postpetition Collateral. Nothing contained herein shall be deemed to limit the right of the Debtors to sell their assets under the Purchase Agreement pursuant to Section 363 of the Bankruptcy Code free and clear of the security interests and liens granted herein, which security interests and liens shall attach to the proceeds thereof upon any such sale.

4.     No security interests or liens shall be granted to any entity pursuant to sections 364(c) or 364(d) of the Bankruptcy Code or otherwise that are senior or equal to the security interests and liens of the Agent and the Lenders against the Prepetition Collateral and the Postpetition Collateral unless further order of the Court allows such security interests or liens.

5.     If the security interests and liens granted to the Agent on behalf of itself and the Lenders herein fail, in retrospect, to provide adequate protection of their interests in the Cash Collateral and the Prepetition Collateral, the Agent on behalf of itself and the Lenders shall be entitled to a superpriority administrative expense claim afforded under section 507(b) of the Bankruptcy Code, having priority over all other Administrative Claims allowed in the Cases; provided that such claim of the Agent on behalf of itself and the Lenders under section 507(b) of the Bankruptcy Code shall (i) be subordinate to (x) the superpriority administrative claim attaching to the proceeds of the Purchase Agreement to which Dycom may be entitled on account of the Breakup Fee (as

defined in the Purchase Agreement), and (y) the superpriority administrative claim to which Dycom may be entitled on account of the Expense Reimbursement (as defined in the Purchase Agreement), and (ii) shall not be paid from the proceeds of any preference actions, fraudulent transfer or conveyance actions, or avoidance actions under chapter 5 of the Bankruptcy Code (collectively, "**Avoidance Actions**"), other than Pledged Actions. No administrative claims shall be granted or allowed to any entity pursuant to sections 364(c), 364(d), or 507(b) of the Bankruptcy Code or otherwise that are senior or equal to the superpriority administrative claims of the Agent on behalf of itself and the Lenders granted hereunder.

6.      Notwithstanding sections 502(b)(2) and 506(b) of the Bankruptcy Code, unless waived in writing by the Agent in each instance, (i) interest on the Tranche A Revolving Loans, Term B-2 Loans and Fees on the Standby Letters of Credit, shall continue to accrue and be payable at the non-default rate, and pursuant to the terms, applicable under the Lender Agreements (without giving effect to any defaults thereunder), (ii) the accrual and payment of all reasonable out-of-pocket costs and expenses of the Agent, including without limitation reasonable fees and out-of-pocket expenses of its counsel and financial advisor, and (iii) promptly after entry of this Final Cash Collateral Order, Debtors shall pay to the Lenders the unpaid cash portion of interest on the Term A Loans and Term B-1 Loans accrued through the Petition Date. The accrual (but not the payment) of such interest, fees, costs and expenses, shall remain subject to the rights of any party in interest, including the Debtors, to seek a determination whether and to what extent the Agent and the Lenders are entitled to the benefits of section 506(b) of the Bankruptcy Code.

7.    Both the Interim and Final Cash Collateral Orders constitute a security agreement for purposes of creation, attachment and perfection of the liens granted herein. All liens and security interests granted herein shall be deemed effective, valid and perfected as of the date of entry of the Interim Cash Collateral Order without the necessity of filing or lodging by any entity of any documents or other instruments otherwise required to be filed or lodged under applicable non-bankruptcy law for the perfection of security interests, liens or mortgages, with such effectiveness, validity and perfection being binding upon any successor entity or entities or subsequently appointed trustee or trustees in any case under any chapter of the Bankruptcy Code and upon any and all other creditors of the respective Debtors who have extended or who may hereafter extend credit to the Debtors, or assert a claim of any nature or in any manner whatsoever in these Cases or any superseding cases of the Debtors, whether or not notice of filing of these Cases has been filed in any county or other political or administrative subdivision in which property of the Debtors' respective estates is or may ever be located. If the Agent shall, in its sole discretion, choose to file such financing statements, mortgages or other documents or otherwise confirm perfection of such security interests and liens, all such financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Cash Collateral Order and subject to all of the terms and conditions of the Interim and Final Cash Collateral Orders.

8.    To evidence further the use of Cash Collateral and the creation of the liens and security interests granted herein, the Debtors are authorized and directed to execute and deliver to the Agent, at the Agent's option, all agreements, documents and instruments, financing statements, mortgages, notices, schedules, other security

- 12 -

agreements, instruments, and other documents reasonably necessary to consummate or effect the terms and provisions of the Interim or Final Cash Collateral Orders.

9.     The rights, claims, security interests, liens and priorities of the Agent and the Lenders arising from the Interim and Final Cash Collateral Orders are in addition to and not in lieu or substitution of the rights, claims, security interests, liens and priorities granted under the Lender Agreements. In the event of any inconsistency between this Final Cash Collateral Order and the Lender Agreements the terms of this Final Cash Collateral Order shall govern and control.

10.     As further protection of the interests of the Agent and the Lenders in the Cash Collateral and the Prepetition Collateral, (i) the Debtors' use of Cash Collateral shall be conditioned upon the observance and performance by the Debtors of the terms, provisions, covenants and agreements specified in the Lender Agreements pertaining to the maintenance and preservation of the Prepetition Collateral, (ii) upon closing of the transactions contemplated by the Purchase Agreement, and except as otherwise permitted by the Agent in writing in each instance (x) all net proceeds thereof shall be paid to the Agent for application to the Obligations in accordance with the provisions of the Lender Agreements, and (y) the balance of the Sweep Account (as defined below) shall be paid to the Agent for application to the Obligations in accordance with the provisions of the Lender Agreements, (iii) the Agent shall be authorized to extend the maturity date of any of the Standby Letters of Credit without prior notice to or authorization by any party (but with subsequent notice to the Debtors), and each such extension shall not impair or affect the obligations of any party under the Lender Agreements with respect to such extended Standby Letter of Credit, (iv) unless waived by

the Agent in writing in each instance, and subject to the rights of any party in interest (other than the Debtors) under decretal Paragraph 23, the Debtors shall transfer cash to the Agent on the next Business Day following Friday of each calendar week, commencing with Friday, December 23, 2005, in the amount by which the aggregate closing balance of the Debtors' operating bank accounts on each such Friday exceeds $3,000,000, and the Agent shall deposit such cash in a separate segregated cash collateral account (the "**Sweep Account**") to secure the Obligations in accordance with the terms and provisions of the Lender Agreements and this Order, which cash shall not be released to the Debtors except with the consent of the Agent in writing in each instance and without notice to or authorization by any other party; (v) except as otherwise permitted by the Agent, and subject to the rights of any party in interest (other than the Debtors) under decretal Paragraph 23, immediately upon entry of the Interim Cash Collateral Order all cash and cash equivalents remaining in the Tranche A Revolving Collateral Account shall be transferred to the Agent, and the Agent shall be authorized to apply such cash and cash equivalents to the Obligations in accordance with the terms and provisions of the Lender Agreements, and (vi) the Debtors and any other party in interest shall be deemed to have waived any rights under section 506(c) of the Bankruptcy Code with respect to any expenditures funded with Cash Collateral in which the Agent and Lenders have a perfected unavoidable security interest or lien.

11.     Consistent with the requirements of 28 U.S.C. § 959, the Debtors are directed to observe and comply with all applicable non-bankruptcy laws except to the extent the Court orders otherwise, and any liability of the Debtors' estates for failing to comply with any such laws shall not be a "reasonable, necessary cost or expense" of

preserving the Prepetition Collateral within the meaning of section 506(c) of the Bankruptcy Code.

12.    The security interests, liens and priority claims granted herein to the Agent and the Lenders shall have priority over all costs and expenses of administration incurred and shall have priority over any and all unsecured claims and expenses in these Cases, whether incurred or arising prior or subsequent to the entry of the Interim and Final Cash Collateral Orders, except for: (a) claims for fees payable to the United States Trustee under 28 U.S.C. § 1930(a); (b) allowable unpaid fees and expenses of professionals (x) retained by the Debtors with Court approval accrued through the date authority to use Cash Collateral terminates hereunder, not to exceed $700,000 in the aggregate, together with the amount of any Court-approved earned and unpaid sales fee due Conway, Del Genio, Gries & Co., LLC arising from the closing of the Purchase Agreement, not to exceed $400,000, or such other additional amounts as the Debtors and the Agent may agree, provided that none of such fees and expenses are incurred for services in connection with challenging the claim of the Agent or the Lenders or challenging any security interests or liens of the Agent or the Lenders or investigating, commencing or prosecuting any claim or cause of action against the Agent or the Lenders based in whole or in part upon facts or circumstances existing prior to the Petition Date, including, without limitation, any Avoidance Actions related thereto, and (y) retained by the Committee with Court approval in an aggregate amount incurred through the date authority to use Cash Collateral terminates hereunder of $100,000 (which amount shall be reduced by the amount of any such fees and expenses paid in these Cases and shall be reflected as a separate line item in the Operating Budget), or

such other additional amounts as the Committee and the Agent may agree, provided that none of such fees and expenses are incurred for services in connection with challenging the claim of the Agent or the Lenders or challenging any security interests or liens of the Agent or the Lenders or commencing or prosecuting any claim or cause of action against the Agent or the Lenders based in whole or in part upon facts or circumstances existing prior to the Petition Date, including, without limitation, any Avoidance Actions related thereto, and provided further that in no event shall the aggregate professional fees and expenses paid to professionals of the Committee in connection with investigation or review of any documents, matters of law, facts or circumstances related to the possibility of commencing any of the foregoing exceed in the aggregate $35,000 (reduced by the amount of any such fees and expenses paid in these Cases; the amounts in clauses (x) and (y) being, collectively, the "**Professionals' Carve-Out**"); (c) success and stretch incentive payments to the Debtors' senior management to the extent such payments are approved by a final order of this Court; (d) payment of obligations (other than to the Debtors' professionals) incurred under the Operating Budget, and due and owing, prior to the occurrence of a Termination Event; (e) the Expense Reimbursement; if approved, and (f) any Breakup Fee that may be allowed (the amounts described in clauses (a) through (f) being collectively the "Carve-Out"). The Carve-Out shall have, in addition, priority over the security interests and liens of the Agent and the Lenders in the Prepetition Collateral. The Breakup Fee and Expense Reimbursement shall be deemed automatically added to the Operating Budget if and when they become due and payable under the Bid Procedures Order (as defined in the Purchase Agreement). Nothing contained herein shall be deemed a waiver of the right of the Agent and the Lenders to file objections to

the allowance and payment of the professional fees and expenses referred to in clause (b) above. The rights of professionals of the Debtors and the Committee in respect to the Professionals' Carve-Out and of Dycom with respect to the amounts referred to in clauses (e) and (f) above shall survive the Agent's delivery to counsel for the Debtors and the Committee of a written notice declaring the occurrence of a Termination Event. This Paragraph does not limit the Debtors' ability to pay its professionals according to the Operating Budget if a Termination Event does not occur.

13. The occurrence of any of the following shall constitute a "**Termination Event**" under this Final Cash Collateral Order except to the extent the Agent affirmatively waives in writing its rights and remedies in respect of such Termination Event: (a) entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (b) entry of an order dismissing or suspending any of the Cases; (c) entry of an order in any of the Cases appointing a trustee under section 1104 of the Bankruptcy Code; (d) entry of an order in any of the Cases appointing an examiner under section 1104(b) with powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code; (e) any term or provision of this Final Cash Collateral Order is modified in any respect without the prior express written consent of the Agent in each instance; (f) any of the Debtors assert that any of the terms or conditions of this Final Cash Collateral Order shall cease to be valid and binding; (g) the payment by the Debtors, without the Agent's written consent in each instance, of aggregate disbursements on a cumulative basis for the period from Monday of the calendar week in which these Cases were filed through the end of each calendar week thereafter, taking each such period as one accounting period, in excess of (i) for each such period ending,

respectively, on December 23 and December 30, 2005, 107.5% of such disbursements projected to be made in the Operating Budget, and (ii) 105% of such disbursements projected to be made in the Operating Budget for each such respective period thereafter; (h) except as otherwise permitted by the Agent in writing in each instance, the Debtors shall receive aggregate cash receipts on a cumulative basis for the period from Monday of the calendar week in which these Cases were filed through the end of each calendar week thereafter, taking each such period as one accounting period, in an amount less than (i) for each such period ending, respectively, on December 23 and December 30, 2005, 85% of such receipts projected to be received in the Operating Budget, (ii) for each such respective period ending in January, 2006, 90% of such receipts projected to be received in the Operating Budget, and (iii) for each such respective period ending thereafter, 92.5% of such receipts projected to be received in the Operating Budget; (i) the payment by the Debtors without the Agent's prior written consent in each instance of any expenditure that is not reflected as an expense category in the Operating Budget; (j) any of the Debtors breach or otherwise fail to abide by any of the terms or provisions of this Final Cash Collateral Order; (k) the Court does not enter the Bid Procedures Order in form and substance satisfactory to the Agent within thirty (30) days following the Petition Date or is stayed following entry thereof; (l) the Court does not enter the Sale Order (as defined in the Purchase Agreement) in form and substance satisfactory to the Agent within seventy-five (75) days following the Petition Date or is stayed following entry thereof; (m) there is a breach of the Purchase Agreement by either Buyer or Seller thereunder, or the Purchase Agreement at any time shall cease to be in full force and effect; (n) the transactions contemplated by the Purchase Agreement do not close within

twenty (20) Business Days after the Sale Order is entered; or (o) Borrower shall modify its existing cash management system without the prior express written consent of the Agent in each instance.

      14.    On March 13, 2006, or upon the earlier occurrence of a Termination Event, without further order of the Court the Debtors forthwith shall, unless otherwise permitted by the Agent in writing, cease the use of Cash Collateral other than to pay expenses and other amounts as and to the extent described in clauses(a) through (f) of decretal Paragraph 12, and the Agent shall not have any obligation to permit further use of Cash Collateral. Upon three Business Days' notice thereafter, the Agent may seek relief from the automatic stay to exercise its rights and remedies under the Lender Agreements and this Final Cash Collateral Order as to both the Prepetition Collateral and the Postpetition Collateral. The Debtors retain the right to seek a determination from the Court whether a Termination Event has occurred and to seek continued use of Cash Collateral despite the occurrence of a Termination Event. The Debtors shall promptly give notice to counsel for the Committee at any time that they receive written notice from the Agent declaring a Termination Event or terminating the Debtors' access to Cash Collateral.

      15.    A representative or representatives of the Agent, or agent(s) thereof, may enter and remain at the places of business of the Debtors at any time during ordinary business hours and may observe the Debtors' conduct and operations, and review the Debtors' books and records, but shall not in any respect direct or participate in the management of the day-to-day business operations of the Debtors. The Debtors are directed to cooperate fully with any such representative. All direct and indirect expenses

reasonably incurred by the Agent with respect to such observation and with respect to any analysis or report prepared by the Debtors, the Agent, or their respective agents, in connection therewith, shall accrue and be payable by the Debtors, consistent with the terms of the Lender Agreements, and as provided herein for all fees, costs and charges of the Agent as set forth in decretal Paragraph 6 hereof.

16.    The Debtors shall further provide the Agent with such information as the Agent may reasonably request concerning the Debtors' business operations and the financial condition of the Debtors, with the same form, guidance, accuracy and detail as that previously provided by the Debtors prior to commencement of these cases, including without limitation, the following items: (i) within 30 days after the end of each month, a balance sheet, income statement and cash flow statement for such month and for the year-to-date; (ii) by the third (3rd) Business Day in each calendar week, for the period from the commencement of the Operating Budget through the end of the prior calendar week a reconciliation of actual cash expenditures to budgeted expenditures, (iii) by the first day of each month, commencing January 1, 2006, a revised Operating Budget for the next thirteen (13) consecutive calendar weeks in form and substance satisfactory to the Agent, (iv) by the 20th day of each calendar month, a written report from the Debtors in form and detail satisfactory to the Agent reviewing the status of all customer contracts, trade accounts receivable, unbilled trade accounts receivable and Standby Letters of Credit (to include, with respect to Standby Letters of Credit, the face amount, date of issuance, identification number, expiry date, outstanding balance and status of the project or other purpose for which each such Standby Letter of Credit was issued), (v) by close of business on the last Business Day of each calendar week, a report in form and substance

satisfactory to the Agent reflecting the cash balances in each of the Debtors' bank accounts, and (vi) such other information and financial statements as the Debtors are required to provide to the Agent under the Lender Agreements. The Debtors shall also provide the United States Trustee and counsel for the Committee with such information. The Debtors also shall allow the Agent to audit the books and records of the Debtors upon the written request of the Agent.

17.    This Final Cash Collateral Order is entered without prejudice to the right of the Agent and the Lenders to seek further adequate protection of their interest in the Cash Collateral and Prepetition Collateral at any time hereafter upon motion after not less than three (3) Business Days' written notice or without notice pursuant to sections 362(f) and 363(e) of the Bankruptcy Code.

18.    If any of the provisions of the Interim or Final Cash Collateral Orders are modified, vacated or stayed by subsequent order of this or any other court, such stay, modification or vacation shall not affect the validity of the respective liens, security interests and administrative claims granted herein to the Agent and the Lenders. The Debtors' use of Cash Collateral pursuant to this Final Cash Collateral Order prior to the Agent receiving notice of such stay, modification or vacation, by or for the benefit of the Debtors, shall be governed in all respects by the original provisions of this Final Cash Collateral Order. The Agent and the Lenders are entitled to all of the rights, privileges and benefits, including the security interests, liens and priorities granted herein and all rights accorded by section 507(b) of the Bankruptcy Code, with respect to any such use of Cash Collateral.

19.    The provisions of this Final Cash Collateral Order shall be binding

upon and inure to the benefit of the Agent, the Lenders, the Debtors and their professionals, the Committee and its professionals, and their respective successors and assigns (including any trustee hereinafter appointed as a representative of any of the Debtors' estates).

20.     The terms and conditions of this Final Cash Collateral Order have been negotiated in good faith and at arm's-length between the Debtors and the Agent and the use of Cash Collateral hereunder shall be deemed credit extended to Debtors by the Agent and the Lenders in good faith within the meaning of section 364(e) of the Bankruptcy Code.

21.     No conduct authorized herein shall be a violation of the automatic stay, including without limitation, the filing of any financing statements as authorized herein.

22.     In the event that any of these Cases is dismissed, or converted to chapter 7, or a trustee is appointed in any of these Cases, neither the dismissal or conversion of such Cases, nor the appointment of a trustee, shall affect the rights of the parties under the Interim or Final Cash Collateral Orders or the Lender Agreements, or any other agreements, documents or instruments executed by the Debtors in favor of the Agent, and all of the respective rights and remedies of the Agent under such agreements and instruments shall remain in full force and effect as if the Cases had not been dismissed or converted or a trustee appointed.   Notwithstanding the dismissal or conversion of any of the Cases or the appointment of a trustee, all terms and provisions of the Interim or Final Cash Collateral Orders applicable to the secured claim and liens of the Agent and the Lenders or any security interests and liens related thereto, shall remain

in full force and effect and, in the event any such terms or provisions shall be inconsistent with the respective terms and provisions of the Lender Agreements the terms of this Final Cash Collateral Order shall control.

      23.    Pursuant to section 502(a) of the Bankruptcy Code, the Master Proof of Claim is deemed allowed, unless a party in interest objects. By their acknowledgment herein, the Debtors have indicated the absence as to them of any objections to allowance of the Master Proof of Claim and, therefore, hereby are deemed to have waived any such objections. This Final Cash Collateral Order is entered without prejudice to the rights of any party in interest, other than the Debtors, with requisite standing to file an objection to the allowance of the Master Proof of Claim pursuant to Bankruptcy Rule 3007, seek a determination of the validity, priority or extent of the security interests and liens of the Agent and the Lenders pursuant to Bankruptcy Rules 7001, et seq., or seek avoidance or subordination of the security interests and liens of the Agent and the Lenders in and against the Prepetition Collateral pursuant to sections 510, 544, 547, 548, 549, 550 or 553(b) of the Bankruptcy Code; provided that, notwithstanding any of the terms and provisions of the Interim Cash Collateral Order, February 21, 2006 shall be the deadline by which any such objections to allowance of the Master Proof of Claim, complaints to determine the validity, priority and extent of the security interests and liens of the Agent and the Lenders in and against the Prepetition Collateral, or motions or complaints to avoid or subordinate the security interests and liens of the Agent in and against the Prepetition Collateral must be filed. Absent any such filings on or before February 21, 2006, the secured claim of the Agent and the Lenders as reflected in the Master Proof of Claim shall be finally allowed as of such date.

The Court may, for cause shown, extend the deadline set forth in this Paragraph 23 upon notice and motion, provided that any motion to extend this deadline must be filed prior to the expiration of such deadline.

24.     Within three (3) business days after the entry of this Final Cash Collateral Order, the Debtors shall send a copy of this Final Cash Collateral Order to (a) the Office of the United States Trustee; (b) Dycom Industries, Inc. and its counsel; (c) Deutsche Bank Trust Company Americas, as agent for the Lenders, its counsel, and the Lenders; (d) the Internal Revenue Service, (e) the Debtors' fifty largest unsecured creditors as set forth in the consolidated list filed with the Debtors' petitions; and (f) other secured creditors of the Debtors holding liens of record, if any, (g) parties to certain executory contracts and unexpired leases, (h) the Debtors' commercial bank, JP Morgan Chase, (i) certain of the Debtors' insurers and sureties; and (j) counsel to the Committee.

Dated: January _10_, 2006

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**Standby Letters of Credit**

Citus Corp

*As of: 12/14/2005*

**Letters of Credit by Provider**

| | | Amount | Date | LC# | Expires (Auto Renewal) |
|---|---|---|---|---|---|
| 3 | Liberty Mutual | 2,300,000 | 01-May-02 | S-14646 | 01-May-03 |
| | Liberty Mutual-Step up | 1,499,650 | 01-Aug-02 | S-14646 | 01-Aug-03 |
| | Liberty Mutual-Step up | 2,000,000 | 29-Oct-02 | S-14646 | 29-Oct-03 |
| | Liberty Mutual-Step up | 1,145,000 | 09-May-03 | S-14646 | 09-May-04 |
| | Liberty Mutual-Step down | (2,303,555) | 30-Jun-05 | S-14646 | N/A |
| | Subtotal: S-14646 | 4,641,095 | | | |
| | **Liberty Mutual** | **4,641,095** | | | |
| | | | | | |
| 4 | Zurich | 2,500,000 | 31-Oct-03 | S-15516 | 31-Oct-04 |
| | Zurich step-up | 1,000,000 | 01-Mar-04 | S-15516 | 02-Mar-05 |
| | Zurich step-up | 1,000,000 | 22-Nov-04 | S-15516 | 23-Nov-05 |
| | Zurich step-up | 1,000,000 | 08-Jul-05 | S-15516 | 09-Jul-06 |
| | **Zurich** | **5,500,000** | | | |
| | | | | | |
| 7 | ACSTAR Ins | 5,000,000 | 03-Apr-02 | S-14604 | 03-Apr-03 |
| | ACSTAR Ins Stepup | 1,500,000 | 16-Apr-02 | S-14604 | 16-Apr-03 |
| | ACSTAR Ins Stepup | 500,000 | 20-May-02 | S-14604 | 20-May-03 |
| | ACSTAR Ins Stepup | 1,600,000 | 21-Jun-02 | S-14604 | 21-Jun-03 |
| | ACSTAR Ins Stepup | 350,000 | 25-Jun-02 | S-14604 | 25-Jun-03 |
| | ACSTAR Ins Stepdown | (3,900,000) | 28-Mar-03 | S-14604 | N/A |
| | ACSTAR Ins Stepup | 2,000,000 | 11-Apr-03 | S-14604 | 10-Apr-04 |
| | ACSTAR Ins Stepdown | (345,000) | 24-Apr-03 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (1,673,840) | 19-May-03 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (1,069,356) | 05-Jun-03 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (1,500,000) | 24-Dec-03 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (1,475,998) | 10-Feb-04 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (470,806) | 13-Feb-04 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (50,000) | 18-Oct-04 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (50,000) | 09-Mar-05 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (105,000) | 16-May-05 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (50,000) | 26-May-05 | S-14604 | N/A |
| | ACSTAR Ins Stepdown | (100,000) | 05-Sep-05 | S-14604 | N/A |
| | **ACSTAR** | **160,000** | | | |
| | | | | | |
| 8 | Greenwich Ins | 4,000,000 | 30-Jul-02 | S-14769 | 30-Jul-03 |
| | Greenwich Ins Stepup | 2,000,000 | 21-Aug-02 | S-14769 | 21-Aug-03 |
| | Greenwich Ins Stepup | 2,000,000 | 07-Oct-02 | S-14769 | 07-Oct-03 |
| | Greenwich Ins Stepdown | (2,750,000) | 27-Jan-03 | S-14769 | N/A |
| | Greenwich Ins Stepdown | (1,000,000) | 24-Mar-03 | S-14769 | N/A |
| | Greenwich Ins Stepup | 1,000,000 | 28-May-03 | S-14769 | 28-May-04 |
| | Greenwich Ins Stepdown | (981,161) | 11-Sep-03 | S-14769 | N/A |
| | Greenwich Ins Stepdown | (1,250,000) | 09-Feb-04 | S-14769 | N/A |
| | Greenwich Ins Stepup | 3,625,000 | 08-Mar-04 | S-14769 | 08-Mar-04 |
| | Greenwich Ins Stepup | 1,554,097 | 30-Sep-04 | S-14769 | 30-Sep-05 |
| | Greenwich Ins Stepdown | (2,735,877) | 09-Mar-05 | S-14769 | N/A |
| | Greenwich Ins Stepdown | (1,285,715) | 09-Jun-05 | S-14769 | N/A |
| | Greenwich Ins Stepdown | (455,947) | 19-Jul-05 | S-14769 | N/A |
| | Greenwich Ins Stepdown | (1,361,121) | 17-Aug-05 | S-14769 | N/A |
| | Greenwich Ins Stepdown | (553,031) | 15-Sep-05 | S-14769 | N/A |
| | Greenwich Ins Stepdown Gr | (37,307) | 21-Oct-05 | S-14769 | N/A |
| | Greenwich Ins Stepdown | (75,000) | 07-Dec-05 | S-14769 | N/A |
| | **Greenwich** | **1,713,938** | | | |
| | | | | | |
| 11 | **Sherburne County Public Works Dept** | 5,000 | 10-Dec-04 | S-16295 | 10-Dec-05 |
| | | | | | |
| 12 | **University of Minnesota** | 10,000 | 04-Feb-05 | S-16384 | 31-Jan-06 |
| | | | | | |
| 15 | RLI | 250,000 | 18-Mar-05 | S-16440 | 18-Mar-06 |
| | RLI Step-up | 300,000 | 01-Jun-05 | S-16440 | 01-Jun-06 |
| | RLI Step-up | 2,250,000 | 15-Jun-05 | S-16440 | 15-Jun-06 |
| | RLI Step-up | 200,000 | 14-Jul-05 | S-16440 | 14-Jul-06 |
| | RLI Step-down | (100,000) | 06-Dec-05 | S-16440 | N/A |
| | RLI Step-down | (2,100,000) | 07-Dec-05 | S-16440 | N/A |
| | **RLI** | **800,000** | | | |
| | | | | | |
| 16 | **GE Capital** | 750,000 | 02-May-05 | S-16530 | 02-May-06 |
| | | | | | |
| | **Total Outstanding** | **13,580,033** | | | |

# EXHIBIT B

## Operating Budget

Orius Corp
Cash Flow Weekly Model

| Week Ending | 15-Dec | 22-Dec | 31-Dec | 7-Jan | 14-Jan | 21-Jan | 28-Jan | 4-Feb | 11-Feb | 18-Feb | 25-Feb | 4-Mar | 11-Mar | 18-Mar | 25-Mar | 1-Apr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Actual | Actual | Estimate | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| **Receipts** | | | | | | | | | | | | | | | | |
| OHS | 1,636,697 | 1,465,580 | 490,537 | 669,973 | 600,586 | 391,949 | 413,946 | 2,850,000 | 3,573,679 | 3,791,500 | 1,115,180 | 973,098 | 1,272,591 | 1,297,464 | 1,362,337 | 1,623,830 |
| Other | | 36,680 | | | 200,300 | | | | | | | | | | | |
| **Total Receipts** | 1,636,697 | 1,502,280 | 490,537 | 669,973 | 800,886 | 391,949 | 413,946 | 2,850,000 | 3,573,679 | 3,791,500 | 1,115,180 | 973,098 | 1,272,591 | 1,297,464 | 1,362,337 | 1,623,830 |
| **Disbursements** | | | | | | | | | | | | | | | | |
| Payroll | (556,200) | (822,357) | (723,817) | (417,253) | (637,737) | (408,859) | (468,830) | (528,180) | (646,641) | (677,713) | (85,787) | (303,087) | (447,507) | (590,333) | (415,488) | (526,308) |
| Trade and Subcontractors | (100,000) | (548,520) | (362,284) | (156,228) | (194,749) | (204,749) | (794,149) | (3,121,453) | (3,421,143) | (3,413,143) | (273,143) | (4,406,966) | (4,406,966) | (478,966) | (408,966) | (408,966) |
| SG&A | (60,602) | (117,989) | (71,250) | (37,699) | (52,353) | (45,763) | (95,067) | (95,067) | (52,353) | (52,353) | (52,353) | (99,007) | (52,353) | (65,761) | (65,761) | (59,007) |
| Rents and Leases | | (58,525) | (85,677) | (116,810) | (77,094) | (12,813) | (162,295) | (63,189) | (63,189) | (71,534) | (107,813) | (67,283) | (59,615) | (43,189) | (71,534) | (107,813) |
| Utilities | | 162,850 | (54,005) | 117,131 | (79,615) | (59,615) | (59,615) | (59,615) | (59,615) | (59,615) | (59,615) | (59,615) | (59,615) | (59,615) | (59,615) | (59,615) |
| Insurance Casualty Expense | | (129,799) | (209,005) | | (125,000) | | (25,000) | (25,000) | | | | (125,000) | | | | |
| Asset Sales | | | | | (200,000) | | | | | | | | | | | |
| Insurance Claims | | | | | | | | | (1,150,000) | | | | | | | |
| Professional Fees | | | | | | (600,000) | | | | | | | | | (450,000) | |
| Unsecured Creditors Committee | (600) | | | | | (50,300) | | | | (450,000) | (50,300) | (200,000) | (27,000) | 5,250 | (60,000) | (33,000) |
| Interest Expense | (737,407) | (1,019,341) | (1,114,940) | (844,378) | (65,736) | 5,250 | (69,417) | (40,373) | (2,004,963) | 5,250 | (59,417) | (3,375) | (955,459) | (1,112,615) | (1,516,017) | (1,174,762) |
| **Total Disbursements** | (737,407) | (1,019,341) | (1,114,940) | (844,378) | (1,265,603) | (785,941) | (1,524,254) | (3,925,320) | (2,004,963) | (1,192,516) | (1,482,369) | (1,408,283) | (955,459) | (1,112,615) | (1,516,017) | (1,174,762) |
| **Projected Cash Flow** | 919,690 | 482,915 | (624,403) | (174,405) | (1,082,918) | (393,991) | (1,110,309) | (975,321) | 1,338,716 | 2,598,984 | (366,990) | (433,387) | 237,096 | 184,849 | (153,680) | 447,268 |
| | | | | | | | | | | | | | | | | |
| Beginning Operating Cash | | | | 7,206,833 | 3,104,608 | 3,000,000 | 3,000,000 | 3,300,300 | 3,000,300 | 3,000,300 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 |
| Cash flow from Operations | | | | (174,405) | (1,082,918) | (393,991) | (1,110,309) | (975,321) | 1,338,716 | 2,598,984 | (366,990) | (433,387) | 237,096 | 184,849 | (153,680) | 447,268 |
| Ending Cash Before Sweep | | | | 7,094,428 | 2,021,685 | 2,606,009 | 1,889,691 | 2,024,679 | 4,338,716 | 5,598,984 | 2,633,010 | 2,564,813 | 3,237,096 | 3,184,849 | 2,846,320 | 3,447,868 |
| DB Sweep/Funding | | | | (3,925,025) | 978,315 | 373,991 | 1,110,309 | 975,321 | (1,338,716) | (2,598,984) | 366,990 | 435,187 | (237,096) | (184,849) | 153,680 | (447,268) |
| **Ending Debt After Sweep** | | | | 3,104,403 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 |
| Sweep Account Balance | | | | 3,929,825 | 2,959,510 | 2,585,519 | 1,667,210 | 475,889 | 2,85,0606 | 4,409,590 | 4,042,600 | 3,607,413 | 3,844,509 | 4,029,358 | 3,875,678 | 4,322,946 |

PROPRIETARY AND CONFIDENTIAL